# Hargadon v. Silk.

June 9, 1939.

Richard P. Dietzman, Special Judge.

McCandless & McCandless and H. O. Williams for appellants.
Gilbert Burnett for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming on the appeal and reversing on the cross appeal.

The City of Louisville is the only one of the first class in this commonwealth. On April 27, 1938 its legislative department passed an ordinance, known as No. 130, series 1938, the title to which was and is: "An Ordinance to provide for and regulate the appointment, and define the powers, terms, and compensation of a Judge Pro Tem of the Police Court of the City of Louisville."

Its first section authorized and empowered the mayor of the city to appoint a standing pro tem. judge of the police court for the city "to preside over said court at any time when, from any cause, the Judge of said court shall fail to attend and hold court, and said Judge Pro Tem of the Police Court shall further be empowered to relieve and assist the regular Judge at any time throughout the term of his office and preside over said court in the dispatch of the business of said court." The second section prescribed that such appointed pro tempore judge should hold office at the pleasure of the mayor; while the third section says: "The Judge Pro Tem shall have the same rights, powers and duties as the regular Judge, and shall receive from the City as compensation the sum of $3,000 per year, payable bimonthly." Section IV says: "No part of the salary of the regular Judge shall be deducted by reason of the appointment of and compensation paid to the Judge Pro Tem."

The appellant, Hargadon, was appointed as such pro tem. police judge pursuant to the terms of the ordinance and began functioning as such. On October 31, 1938, the appellee and plaintiff below, as a citizen and tax payer of the city, filed this action in the Jefferson Circuit Court against Hargadon—both individually and officially—and against the mayor of the city, and the city itself, seeking injunctive and other orders preventing the execution of the ordinance in any respect, upon the ground that its enactment was illegal and void because in excess of the authority of the legislative department of the city to enact. The learned special trial judge to whom the cause was submitted held that the ordinance was invalid; but he sustained the right of the mayor of the city to appoint a standing pro tem. judge of the police court of the city, which he concluded was not in conflict with Sections 2925 and 2926 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, they being a part of the charter of cities of the first class. From that judgment defendants prosecute this appeal, and plaintiff has prayed for and obtained in this court a cross appeal from that portion of the judgment upholding the right of the mayor under the statute to appoint a standing pro tem. judge.

Two fundamental principles of law applicable to municipalities are, (a) that they possess no power except that expressly conferred upon them, or that which

is necessarily implied in order to carry out the express-
ly conferred authority, and (b) that charters of munici-
pal corporations, enacted by the legislature pursuant
to constitutional authority, occupies the same relation
to the municipality as does a constitution to a state. In
other words, that a municipal charter is its constitution,
and when that charter prescribes (expressly or by neces-
sary implication) the power and authority of a munici-
pality no ordinance may be enacted in conflict therewith.
The two principles referred to are too well settled to
require fortification by citation of either texts or opin-
ion authority, and which counsel for both sides admit.
With the law as so understood we will now proceed to
determine the issues involved insofar as may be neces-
sary for a disposition of the case.

Section 160 of our Constitution prescribes, inter
alia, for the election of police judges in cities of the com-
monwealth by the qualified voters of the city, but pro-
vides that the offices of mayor and police judges "of the
towns of the fourth, fifth and sixth classes may be ap-
pointed or elected as provided by law." It is further
therein required that the office of police judge "shall be
four years," and until a successor shall be elected or ap-
pointed and qualified. Under the provisions therein
prescribed police judges of cities of the first class must
be elected by the qualified voters of the city and for a
term of four years. Section 2924—which is a part of
the charter of cities of the first class—prescribes that,
"Said judge [police] shall devote his whole attention to
the duties of said court and shall be paid his salary at
the same time and in the same manner as the salaries of
other city officers are paid"—the prior Section 2923 au-
thorizing the city council by ordinance to fix his salary.
Section 2925 of the same charter, in its entirety is:
"When, from any cause, the judge of said court shall
fail to attend and to hold court, the mayor of the city
shall select and designate some lawyer, who has no case
on the docket of said court, to act as judge pro tem. for
said court, and the judge pro tem. shall have the same
rights, powers and duties as the regular judge has, and
the judge pro tem. shall receive from the city the same
pro rata compensation paid the judge of the court."

The following Section 2926—also a part of the same
charter—confers the right upon the judge of the police
court of the city to take a vacation of two months an-
nually, during which time—whether the privilege is ex-

ercised all at one time or in divided parts—a pro tem. police judge shall perform the duties of the office and receive the statutory compensation, which is the same pro rata of that received by the regular judge for the same period of services, and the same compensation is allowed the pro tem. judge when serving on any other emergency occasion.

Were we without any precedent to guide us in determining the questions involved in the appeal we would be compelled to conclude that the attacked ordinance was in direct violation of both Sections 2925 and 2926, supra, and undoubtedly so with reference to the uninterrupted and continuous duties, powers and authority it attempts to confer upon the pro tem. judge, and in attempting to pay him a fixed annual salary. Correctly speaking, the pro tem. judge, authorized to be appointed by the ordinance, is in reality but a standing deputy judge, or a duplicate or second judge of the police court, when the Constitution and statute prescribes for only one police judge who shall be elected by the legal voters in the city. In that phase of the case the ordinance is violative of both our Constitution and the charter provisions of the city. But we are not without judicial determinations of the same involved principles of law, arising in analogous cases interpreting similar statutory provisions.

Prior to 1930, Section 1059 of Carroll's Kentucky Statutes contained provisions authorizing the county judge, when he was compelled to be absent "or unable from any cause to attend or hold the county court or preside at any trial or prosecution," or when he for any reason could not function in any particular case or matter, to appoint a pro tem. judge to preside and function during the absence of the regular judge, or when for any reason he could not do so. In the case of Cox v. Allen, 188 Ky. 598, 222 S. W. 932, 934, there was presented to us for determination the right of the county judge under the authority conferred on him by Section 1059, supra, to appoint a standing or permanent county judge pro tem. instead of appointing one upon the arising of the emergencies or occasions set forth in that section. In the course of our discussion and determination of the question we said: "It will thus be seen that the county judge, under the supposed authority of the section, appointed a regular deputy or substitute county judge, with power and authority to act in all matters the same

as the regular county judge. Manifestly no such authority was ever intended to be conferred by the Legislature in enacting the statute. Its only purpose was to authorize the county judge to appoint and designate a judge pro tem. to preside over the county court when the regular judge was absent from the county, or from any cause was unable to attend and perform the duties of the office or to preside at any particular trial or prosecution. * * * The purpose of the Legislature was to provide a method by which the public business to be discharged by the county judge might not be postponed or obstructed because of necessary absence from the county of the regular judge, or his prevention from the performance of his duties on account of sickness or other valid causes. To construe the section as the county judge did in this case would result in having two or more county judges in the same county at the same time, but only one of whom was chosen by the people as provided by law. They might perchance be making contradictory orders concerning the same matter at the same time, and thus not only obstruct the orderly administration of the office, but create endless confusion.''

The interpretation made in that case was approved in the later one of Louisville & N. R. Co. v. Bays' Adm'r, 220 Ky. 458, 295 S. W. 452; but in that case it was not shown who made, entered or signed the attacked order involved therein; nor whether, if made and entered by a pro tempore county judge, he was without authority to do so because of the nonexistence of any of the emergencies or occasions when he could legally act. The attack so made therein was a collateral one, and we indulged the presumption that the questioned order therein was legally made and entered (because of the absence of the foregoing facts) whether by the judge pro tem. or the regular judge. Except for that presumption—with the absence of any evidence to contradict it—we clearly indicated in that case that an order made by a pro tem. county judge appointed under the section of the statutes as it was before its amendment in 1930 when the county judge was not for any reason disqualified to act, would be void—thus adhering to the determination made in the Cox case, supra. However, Section 1059, as it existed when both the Cox and Bays cases arose and were determined, was amended in 1930, c. 117, and the county judge was empowered by the amendment to appoint a standing county judge who

could function in all of the instances when the regular judge for any reason could not. By the enacting of that amendment the legislature clearly indicated that the section of the statute before the amendment withheld any such authority on the part of the county judge to appoint a standing pro tem. judge, and to supply such authority the amendment was enacted. There is no material distinction between the prior and unamended Section 1059 of our statutes—relating to the appointment of a pro tem. county judge—and the present Section 2925 (inserted supra) relating to the appointment by the mayor of first class cities of a pro tem. judge of the police court for the city. The one permitted such an appointment by the county judge to act in lieu and instead of the regular county judge in certain emergencies and contingencies; while the other makes the same provisions with reference to the appointment of a pro tem. police judge for cities of the first class by the mayor.

The Cox case held that no pro tem. county judge could function except in the absence of the regular judge, or when he was otherwise disqualified; and it, in effect, construed the word "absent" as meaning the absence of the regular judge from the jurisdiction of his court, thus disqualifying any pro tem. judge from acting if the county judge was within the county and not otherwise disqualified. We, therefore, excluded from the meaning of the word (as employed in the statute) all failures of the regular judge to be present in the courtroom when business of his office was to be transacted, provided he was elsewhere within his jurisdiction, was able to attend and not otherwise disqualified.

The attacked ordinance in this case not only dispenses with the requirement of such emergency occasions before a pro tem. police judge may act, but confers upon him power "to relieve and assist the regular judge at any time throughout the term of his office and preside over said court in the dispatch of the business of said court." That language is broad enough to not only authorize the rendering of such assistance while the regular judge is both present and qualified to act, but it goes further and authorizes the holding of a police court, presided over by the pro tem. judge, at the same time the regular judge is conducting a court at another place—all of which is in direct conflict, we repeat, with Section 2925, supra, and which in turn, as we have seen, is a part of the constitution of the city.

Moreover, the same section provides that the pro tem. judge shall receive as his compensation when he does serve "the same pro rata paid the judge of the court," which means that he is not to be compensated unless he does render service, and when done the measure of his compensation shall be the same as received by the regular judge covering the same period of time. The attacked ordinance, however, fixes the compensation of the pro tem. judge, as long as he remains in office at the pleasure of the mayor, at $3,000 per annum, payable semi-monthly, and which means that he would be entitled to draw that compensation whether he served at all as police judge throughout the period of his appointment. Surely it requires no authority—text or otherwise—to conclude that the ordinance with reference to compensation is likewise in direct conflict with the provisions of the statute. We, therefore, have no hesitancy in concluding that the learned special trial judge (Hon. Richard P. Dietzman) was correct in holding the ordinance invalid. But, he held that the statute without the ordinance could be interpreted as giving the authority to the mayor to appoint a standing pro tem. judge who might serve when any of the contingencies calling for his services might arise. That question was expressly left undecided in the Cox case with reference to the appointment of pro tem. county judges. The two statutes relating to the appointment of the two classes of pro tem. judges are practically the same, and the question which we declined to determine in the Cox case is now presented to us.

We have had in this commonwealth from time to time statutory provisions with reference to the appointment of special, or pro tem. circuit judges in contingencies wherein the regular judge of such courts for some reason could not act. At the present time that authority is conferred upon the chief justice of the commonwealth. All of those statutes set forth the contingencies when a special or pro tem. circuit judge might be appointed by the particular authority upon which the right was conferred; and it has never been exercised except when and as occasions arise. We anticipate that no one would insist that under the present statutory provisions for the appointment of special or pro tem. circuit court judges, the chief justice could appoint one or more standing special judges to function in any circuit court of the commonwealth upon his direction. But

the interpretation given to Section 2925, supra, of our statutes relating to the appointment of pro tem. police judges would seem to authorize the chief justice under authority conferred on him by other statutes similarly phrased, to make such a standing appointment, or appointments, of a sufficient number of standing special judges to perform the duties required of them throughout the state. It is our interpretation of the involved section (2925) that it provides only for the appointment of a pro tem. judge of the police court of a first class city only when the occasion arises for the need of one, and that it does not confer the authority upon the mayor—as was attempted to be done by the ordinance—to appoint a standing pro tem. judge though unauthorized to serve except when the emergency calling for one exists.

The word "pro tem." is defined by Mr. Webster, "For the time being, temporarily." The text in 33 C. J. 926, under the treated subject of "Judges," defines a pro tem. judge as "A judge elected or appointed to act for, and in the absence, sickness, or disqualification of, the regular judge. * * * A judge pro tem is only a substitute judge and not a duplicate judge." The same publication in volume 50, page 417, in defining "pro tem." says: "For the time being; temporarily; provisionally." Clearly such definitions exclude the idea of "standing" or "permanency," from any connection with the appointment and tenure of a pro tem. judge, and for which reason we conclude that the learned special chancellor erroneously construed the statute.

Wherefore, for the reasons stated, the judgment is affirmed on the appeal, but reversed on the cross-appeal, with directions to enter one in conformity with this opinion; the whole Court sitting.