REGENCY PHEASANT RUN LTD., et al., Petitioners,

v.

The Honorable Edmund P. "Pete" KAREM, et al., Respondents.

No. 93–SC–130–TG.

Supreme Court of Kentucky.

July 1, 1993.

Dennis J. Stilger, Louisville, for petitioners.

Edmund P. Karem, Sitlinger, McGlincy, Steiner & Theiler, Richard J. Emmett, William McAnulty, Holland N. McTyeire, Greenebaum, Doll & McDonald, Kenneth E. Dunn, Louisville, for respondents.

## OPINION DENYING THE ISSUANCE OF A WRIT OF PROHIBITION

STEPHENS, Chief Justice.

The issue presented in this case is whether a practicing attorney who is a retired judge can be temporarily appointed to serve as a special judge, i.e., serve as a judge *pro tempore;* or, stated another way, can a judge *pro tempore* practice law?

The action at the trial court level involved a sale of three apartment communities in Lexington from Jack R. Medford, Barbara Medford and Degaris Townhouses, a limited partnership in which Jack R. Medford and Barbara Medford were the sole partners, (hereinafter Medford), to Regency Pheasant Run Limited, Regency Timberwood Limited, Regency Nicholasville Limited, Regency Associates, David C. Eades, Sarah Fitzgibbons, James McKinney and Paul Kinney (hereinafter Regency). The lawsuits below began when Medford sued Regency for payment of the notes on the three properties. Regency counterclaimed against Medford alleging fraud in the inducement and breach of contract. John J. Bleidt intervened in the action to recover a commission for the sale of the properties.

Between September 30, 1992, and November 18, 1992, a twelve day bench trial was held before Honorable Edmund P. Karem, Judge, Thirtieth Judicial Circuit. Judge Karem retired from the Jefferson Circuit Court on December 31, 1992, before an opinion was rendered in the Medford case. After his retirement the judge entered the private practice of law.

Pursuant to KRS 26A.020 and SCR 1.040, on February 2, 1993, an order was entered temporarily assigning Judge Karem as a Special Circuit Judge in order to preside over nine cases on February 3, 1993.

On February 3, 1993, Special Judge Karem rendered an opinion which dismissed the intervening complaint of Bleidt, granted a judgment for Medford, and awarded attorney's fees to Medford. Medford's attorneys below, William E. McAnulty, Richard J. Emmett and the partners of the law firm of Greenebaum, Doll and McDonald became real parties in interest upon the awarding of attorney's fees.

Regency filed an action seeking a writ of prohibition on February 12, 1993, in the Court of Appeals. The Court of Appeals recommended that this case be transferred to our Court for consideration with a case which, at the time, was on appeal to this Court. On April 14, 1993, transfer was granted.

Initially, it must be stated that it is questionable as to whether this is an appropriate case in which to seek the issuance of a writ of prohibition. "Such writs are generally issued only when lower courts are proceeding or are about to proceed outside their jurisdiction and there is no adequate remedy by appeal, . . ." *Shumaker v. Paxton,* Ky., 613 S.W.2d 130, 131 (1981). In this case, if an error occurs at the trial level, petitioners have an adequate remedy on appeal. However, even though we have serious doubts that this case falls within the parameters of a writ of prohibition, due to the nature of the issues presented, we will make a determination on the merits.

The first issue to be addressed is whether the Chief Justice of the Supreme Court of Kentucky or his designee has the authority to appoint a retired judge, who is practicing law, as a Special Judge. In petitioners' original action for a writ of prohibition, it is argued that the procedures used by the Chief

Justice to appoint a Special Judge violate Section 117 of the Kentucky Constitution. Section 117 requires that "Justices of the Supreme Court and judges of the Court of Appeals, Circuit and District Court shall be elected from their respective districts or circuits on a nonpartisan basis as provided by law."

Petitioners also assert that the appointment of the Special Judge violates Section 123 of the Kentucky Constitution, which states in pertinent part that "[d]uring his term of office, no justice of the Supreme Court or judge of the Court of Appeals, Circuit Court or District Court shall engage in the practice of law, ..." Petitioners further contend that such an appointment violates the due process clause of the Fourteenth Amendment to the United States Constitution and Section 2 of the Kentucky Constitution.

▮ Even though petitioners cite sections of the Kentucky Constitution, they fail to cite the section which is dispositive of the questions presented, Kentucky Constitution, Section 110. Section 110(5)(b) states unequivocally that the Chief Justice "shall assign temporarily any justice or judge of the commonwealth, *active or retired*, to sit in any court other than the Supreme Court when he deems such assignment necessary for the prompt disposition of causes." (Emphasis added.) The language of this section clearly authorizes the Chief Justice to appoint a retired judge to serve as a special judge, *pro tempore*.

The Chief Justice's appointment of a special judge is also authorized by statute. KRS 26A.020(1) states in pertinent part:

When, from any cause, a judge of any *Circuit or District Court fails to attend,* or being in attendance cannot properly preside in an action pending in the court, or if a vacancy occurs or exists in the office of circuit or district judge, the circuit clerk shall at once certify the facts to the Chief Justice who shall immediately designate a *regular or retired justice or judge* of the Court of Justice as special judge.... (Emphasis added.)

KRS 26A.020(2) then explains how a retired justice or judge serving as a special judge should be compensated.

▮ Similarly, petitioners' argument under Kentucky Constitution Section 123 fails. Section 123 of the Kentucky Constitution prohibits a judge or justice from practicing law "[d]uring his *term* of office." (Emphasis added.) Our Courts have long held that "the word *term* is uniformly used to designate a *fixed and definite period of time." Speed & Worthington v. Crawford,* Ky., 60 Ky. (3 Met.) 207, 213 (1860). (Emphasis in original.) Continually we have stated that "term of office"

means the fixed period of time during which an officer or appointee is entitled to hold the office, perform its functions, enjoy its privileges and emoluments, and does not apply to appointive offices held at the pleasure of the appointing power.

*Kratzer v. Commonwealth,* 228 Ky. 684, 15 S.W.2d 473, 475 (1929) (Citations omitted). Section 123 was not intended to be applicable to special judges because each special judge *pro tempore* appointed by the Chief Justice holds this appointive office at the pleasure of the Chief Justice and does not serve a "term of office". Thus, petitioners' argument that the judgment is void because it was issued under an unconstitutional expansion of the Court's constitutionally granted authority is totally without merit.

▮ The purpose of the use of special judges, acting *pro tempore*, is to expedite the handling of litigation, whenever and wherever needed. The use of such experienced, retired judges not only retains the quality of the men and women who preside at trial, but obviates the necessity for regular full-time judges to delay their own work by "filling in" the many vacancies that demand special judges. This use of retired judges, whether practicing law or not, is clearly authorized by the Kentucky Constitution, the Kentucky Revised Statutes and is in the best interest of the operation of the Kentucky Court of Justice.

"The authority to exercise administrative control of the judicial branch of government is vested in the Supreme Court of Kentucky." *Kentucky Utilities v. South East Coal Com-*

*pany,* Ky., 836 S.W.2d 407, 408 (1992). See also *Ex Parte Auditor of Public Accounts,* Ky., 609 S.W.2d 682 (1980). From a reading of the Kentucky Constitution, statutory law and case law it is beyond cavil that such appointments are proper.

The next issue we address is whether it is violative of the Code of Judicial Conduct to appoint as a special judge a retired judge or justice who is currently practicing law. Before we discuss this issue we first must define the role of a special judge. We have used the terms special judge and judge *pro tempore* interchangeably in the past. *Hargadon v. Silk,* 279 Ky. 69, 129 S.W.2d 1039 (1939). In *Hargadon,* the definition of a judge *pro tempore* was quoted from Corpus Juris as being a judge

> 'elected or appointed to act for, and in the absence, sickness, or disqualification of, the regular judge..... A judge pro tem is only a substitute judge and not a duplicate judge.'

*Id.* at 1043.

■ A part-time judge is defined by SCR 4.300, Canon 7, *Compliance with the Code of Judicial Conduct,* Subsection A as "a judge who serves on a continuing or periodic basis, but is permitted by law to devote time to some other profession or occupation and whose compensation for that reason is less than that of a full-time judge." Canon 7, *Compliance with the Code of Judicial Conduct,* Subsection B defines a judge *pro tempore* as "a person who is appointed to act temporarily as a judge." It is obvious that a judge "temporarily assigned ... to preside over [nine] cases on February 3, 1993," is *not* serving on a continuing or periodic basis, but is appointed to act temporarily as a judge; i.e., as a judge *pro tempore.*

In support of their petition, petitioners contend that such an appointment violates Canons 2, 2(A) and 5(F) of the Code of Judicial Conduct. SCR 4.300, Canon 2 states that a "judge should avoid impropriety and the appearance of impropriety in all his activities"; Canon 2A states that a "judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary"; and Canon

5F states that a "judge should not practice law."

Once again, petitioners failed to cite the dispositive provision from our Code of Judicial Conduct. Canon 7, *Compliance with the Code of Judicial Conduct* states that:

> [a]ll judges should comply with this Code except as provided below....
>
> B. Judge pro tempore. A judge *pro tempore* is a person who is appointed to act temporarily as a judge. (1) While acting as such, a judge *pro tempore* is not required to comply with Canon 5C(2), (3), D, E, F, and G. (2) A person who has been a judge *pro tempore* should not act as a lawyer in a proceeding in which he has served as a judge or in any other proceeding related thereto.

■ Because the Special Judge was acting under a constitutionally valid appointment by the Chief Justice, Canons 2 and 2(A) were not violated by the actions of the Special Judge. Canon 7, *Compliance with the Code of Judicial Conduct,* Subsection B specifically excludes judges *pro tempore* from compliance with Canon 5(F); thus, Canon 5(F) was certainly not violated.

A simple reading of the applicable statutes and Canons makes it apparent that the Chief Justice was not prohibited from appointing Special Judge Karem in the case below.

Petitioners cite *Brown v. Goff,* No. 92–CA–2417–OA, for the proposition that such an appointment is improper. While *Brown v. Goff* is now final, it has been designated as an unpublished opinion and order. CR 76.-28(4)(c) states that "[o]pinions that are not to be published shall not be cited or used as authority in any other case in any court in this state." Thus, reliance on *Brown v. Goff* is inappropriate.

For the foregoing reasons, the petition for a writ of prohibition is denied.

COMBS, LAMBERT, LEIBSON, REYNOLDS and SPAIN, JJ., concur.

WINTERSHEIMER, J., files a separate opinion concurring in result.

WINTERSHEIMER, Justice, concurring.

I concur in the result achieved by the majority opinion but wish to state my views separately.

My initial concern is with the definition of the word "term" and the interpretation of the phrase "term of office" as it relates to the constitutional prohibition against a judge or a justice practicing law pursuant to Section 123 of the Kentucky Constitution.

I fully agree that Section 110(5)(b) of the Kentucky Constitution provides that the Chief Justice shall assign temporarily any justice or judge of the Commonwealth, active or retired, to sit in any court other than the Supreme Court when he deems such assignment appropriate for the prompt disposition of causes. In this case the appointment of Special Judge Karem was entirely proper to complete the work of a 12–day bench trial heard in late 1992. His appointment as Special Judge was dated February 2, 1993, in order to preside over nine cases on February 3, 1993, including the one in issue. Clearly that assisted in the prompt disposition of those causes. The record indicates that the parties to this particular case knew well in advance that Judge Karem had intended to retire and that in all likelihood his final decision on their case would be delayed until a few weeks after his retirement. The order itself is limited to one day, and Special Judge Karem's decision was based on the work product that had occurred during his term as a regularly elected judge of the Jefferson Circuit Court. There is an element of untimeliness in the motion for a writ of prohibition but it does not approach the situation considered in *Kentucky Utilities Company v. Southeast Coal Company*, Ky., 836 S.W.2d 407 (1992).

The question of term, or term of office, can be addressed in essentially three ways. First, a duly elected judge has a definite term of office established by the statutes and electoral process. Second, a judge who is duly appointed by the Governor to fill a vacancy or unexpired term, has a definite term and term of office. Third, a judge who is appointed by the Chief Justice pursuant to Section 110 of the Kentucky Constitution, or K.R.S. 26A.020 also should have a specific term or term in office as delineated by the order of appointment in which the reason and purpose for such appointment is provided.

The word "term" is generally defined as a fixed period of time. When used with reference to a court, it frequently becomes the phase "term of court" which signifies the amount of time during which a court holds session or sits for the transaction of legal business. The session, or term of court, begins when the court convenes for the term and continues until final adjournment, either before or at the expiration of the term. *Cf. Black's Law Dictionary*, West Publishing (4th ed. 1951).

Naturally all of these appointive powers must be exercised with careful discretion by the appointing authority. Discretion must also be used by the appointee in the use of authority. Unfortunately, there is a certain element of the possible appearance of impropriety in a retired or resigned judge or other special judge practicing law in a close proximity either before or after such special service to the judiciary. In an ideal situation, the work of a voluntarily retired judge should be scheduled in such a way as to avoid unnecessary extensions. The appointment in order to complete work can be justified on the basis of efficiency. Certainly the use of the word term, or term of office, as I have limited it above, removes any possibility of a special judge practicing while he is serving as a special judge.

In addition, great care must be used to continue the commitment to full time professional judges which was the basis of the judicial article adopted by the voters as a constitutional amendment in 1975. At that time, the people of the Commonwealth clearly spoke against the use of part-time judges in a new and modern judicial system. Careful compliance must be observed for the will of the people in order to continue respect for the judiciary. There is always the possibility of potential abuse in the use of part-time judges. There is no hint of such abuse currently but we must look to the future and scrupulously guard and protect the judicial function.

I concur in the result achieved by the majority opinion.